UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

Joseph Rowlery, Jr.,

    Plaintiff,

    v.

Genesee County, Robert Winston,
David Schmieder, E. Martin,
S. Pritchard, Mangrum, Szemites,
Nukolls, and Dobbs,

    Defendants.
_____/

Case No. 12-cv-15292
Hon. Judith E. Levy
Mag. Judge David R. Grand

# OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT [74]

This case alleges police misconduct. It arises out of a claim by plaintiff Joseph Rowlery, Jr. ("Rowlery") against defendants Genesee County, Robert Winston, David Schmieder, Elijah Martin, S. Pritchard, Mangrum, Brandon Szemites, Nuckolls, and Dobbs. Defendant Schmieder was a lieutenant and defendant Nuckolls was a sergeant in the Genesee County Sheriff's Department at all times relevant to this

1

complaint. The other individual defendants were Genesee County deputy sheriffs who were assigned to work in the jail.

Plaintiff brought claims against all defendants for (1) excessive use of force; (2) cruel and unusual punishment in violation of the Eighth Amendment; (3) assault and battery; and (4) gross negligence. He also brought a claim against Genesee County for failure to train and supervise its officers, in violation of the Fourth and Fourteenth Amendments.

Before the Court is defendants' Winston, Szemites, Mangrum, Prtichard, Nuckolls, and Martin's second motion for summary judgment, in which they argue that video evidence demonstrates that they are entitled to qualified immunity with respect to plaintiff's excessive force claim arising out of the December 2010 altercation. (Dkt. 74). For the reasons set forth below, the Court denies in part and grants in part defendants' motion.

I.  Procedural Background

On March 24, 2014, defendants filed a motion for partial summary judgment with respect to the following claims: (1) excessive use of force under the Eighth Amendment; (2) all claims against Genesee County;

2

(3) all official capacity claims; (4) assault and battery against all defendants except Winston and Szemites; and (5) gross negligence. (Dkt. 58). Plaintiff responded to the motion, a reply was filed, and on July 15, 2014, oral argument was held. (Dkt. 63 & 64). Upon questioning during oral argument, the Court learned there was a video of one of the instances of alleged unconstitutional conduct, and the parties were granted an opportunity to submit the video along with a brief explanation of what they believe it showed. The following is a link to the video:



On October 16, 2014, the Court issued an opinion and order granting in part and denying in part defendants' motion for summary judgment. (Dkt. 69). On November 7, 2014, defendants sought leave to file a second motion for summary judgment to address qualified immunity related only to the December 2010 incident. (Dkt. 71). The Court granted defendants leave to file this motion, received briefings

from all parties, and heard oral argument on February 18, 2015. (Dkt. 73-77).

II.     Facts

The Court adopts the fact section of its October 16, 2014 Opinion and Order. With respect to the video of the December 2010 incident, the Court found:

> Video evidence shows plaintiff standing by a jail cell for about two minutes before defendant Winston and another officer, coming from the opposite end of the hall, approached him. (Dkt. 63-5 at 6). Defendant Winston allegedly asked plaintiff what he was doing, and plaintiff replied that he was being released. According to plaintiff, defendant Winston responded: "No you're not. Give me your coat, you're going back in your cell." (Dkt. 63-3 at 19).
>
> The video shows plaintiff talking with the two officers while a third officer walks down the hall towards plaintiff. The video does not contain audio. Plaintiff removes his coat and places it on the floor. At this point, there are five officers standing in the hallway. Plaintiff claims that defendant Winston ordered him to lie down on the floor and put his hands behind his back. Plaintiff maintains that he was fully compliant with this order. (Dkt. 63-3 at 19-20). Defendant Winston claims that plaintiff was not compliant with any of his instructions, but acknowledges that plaintiff removed his shoes and jacket voluntarily. (Dkt. 63-5 at 7).
>
> The video shows plaintiff turn to face the wall and the officer nearest to him (Winston) lunges at him, pushing him against the wall. Defendant Winston claims that he felt plaintiff "tense up" and "push[] back" when he attempted to guide him into the cell. In order to get him to the ground, Winston

> testified that he "delivered a strike to [plaintiff's] left common peroneal," which is a nerve in the back of the leg. (Dkt. 63-5 at 7). This is a strike officers are trained to use to restrain someone who is resisting their commands. (*Id.*).
>
> The video shows that plaintiff was forced to the floor and landed on his face. Then three of the other officers restrained plaintiff at his head and feet while defendant Winston appears to kneel on top of plaintiff's back. Defendants Mangrum and Pritchard testified that they held plaintiff down on the ground while he was being handcuffed. (Dkt. 63-6 at 18; Dkt. 63-8 at 8). Defendant Martin also testified that he came into physical contact with plaintiff during this altercation. (Dkt. 63-7 at 9). Plaintiff alleges that while lying handcuffed face-down on the floor, Winston beat on the back of his head while kneeing him in the back causing his head to "split open on the hard concrete floor." (Dkt. 63-3 at 19-21). Defendants claim that plaintiff was resisting while on the floor by tightening his arms to make restraining him more difficult. While plaintiff was being restrained on the floor, a sixth officer walked down the hallway towards the melee.
>
> A group of officers then lifted plaintiff up so that he was sitting in the middle of the hallway. The end of the video shows plaintiff sitting handcuffed with his pants around his ankles and blood on the left side of his face and above his right eye. Plaintiff also alleges that one of his teeth was knocked out as a result of the strikes to his head. (Dkt. 63-3 at 23).

(Dkt. 69).

Defendants did not provide the Court with guidance as to the identities of each individual officer in the video. During oral argument,

plaintiff's and defendants' counsel both declined the Court's invitation to view the video and provide their perspective on its content.

III.   Standard of Review

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir.2002)).

IV.   Analysis

Qualified immunity is an affirmative defense available to government officials performing discretionary functions. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Whether a defendant is entitled to qualified immunity "generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that

6

were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The plaintiff bears the burden of proving that a defendant is not entitled to qualified immunity. *Gardenshire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

Courts in this Circuit employ a two-step analysis to determine whether a defendant is entitled to qualified immunity. First, "viewing the facts in the light most favorable to plaintiff, we determine whether the allegations give rise to a constitutional violation." *Shreve v. Franklin Cty.*, 743 F.3d 126, 134 (6th Cir. 2014). Second, "we assess whether the right was clearly established at the time of the incident." *Id.* A court may undertake either step of the analysis first. *Pearson v. Callahan*, 555 U.S. 223 (2009).

The Court applies the same summary judgment standard to a motion based on qualified immunity as in other cases: the facts must be viewed in the light most favorable to plaintiff and genuine disputes of

7

fact cannot be resolved in favor of the movant. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

> A. Whether the Facts Give Rise to a Constitutional Violation
>
> > 1. Legal Standard Under the Fourteenth Amendment

Because plaintiff was a pretrial detainee at the time of the alleged excessive force his excessive force claim is analyzed "under the Fourteenth Amendment's Due Process Clause, which 'protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention…, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.") "A plaintiff has a substantially higher hurdle to overcome to make a showing of excessive force under the Fourteenth Amendment as opposed to under the Fourth Amendment." *Burgess v. Fischer*, 735 F.3d

462, 472 (6th Cir. 2013) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001)).[1]

Under the Fourteenth Amendment, the standard for excessive force is "whether the actions of law enforcement officers 'shock the conscience of the court.'" *Francis v. Pike Cnty.*, 875 F.2d 863 at *2 (6th Cir. 1989) (quoting *Lewis v. Downs*, 774 F.2d 711, 713 (6th Cir. 1987). The Sixth Circuit has explained that where the accused government actors:

> are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action ..., their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" towards the plaintiff's federally protected rights. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation ..., public servants' reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."

---

[1] There is currently a split among the circuits regarding the standard that should be applied to pre-trial detainee excessive force claims. During the current term, the Supreme Court will address whether the requirements of an excessive force claim are satisfied by a showing that a state actor used intentional and objectively unreasonable force against a pre-trial detainee. *See Kingsley v. Hendrickson*, 135 S.Ct. 1039 (2015).

*Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*, 523 U.S. at 852-53) (internal citations omitted). The malicious and sadistic standard, however, "applies only in emergency-type situations such as a prison riot or a high-speed police chase." *United States v. Budd*, 496 F.3d 517, 530 n. 9 (6th Cir. 2007).

In non-emergency situations, the Court must consider the following factors when determining whether an action shocks the conscience: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the officers, and (4) any efforts to temper the severity of the force used. *See Hudson v. McMillan*, 503 U.S. 1, 6 (1992); *Vaughn v. Thomson*, 121 F.3d 710 (6th Cir. 1997).

The events here did not occur in a "rapidly evolving, fluid, and dangerous" situation as contemplated by the Sixth Circuit in *Budd* and the *Hudson* factors apply.

### 2. Defendants Szemites and Nuckolls

As a preliminary matter, "an excessive-force claimant must show something more than *de minimis* force." *Leary*, 528 F.3d at 443. In *Leary*, the Sixth Circuit found that a karate chop to the back of the neck

10

was *de minimis* when the plaintiff "did not suffer any verifiable injury from the blow." *Leary*, 528 F.3d at 443. The Sixth Circuit subsequently explained that there is no "blanket *de minimis* requirement for excessive force claims." *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394, 406-07 (6th Cir. 2009) ("a plaintiff may allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.") (internal quotes and citations omitted); *see also Richmond v. Settles*, 450 Fed. App'x 448 at 453 (6th Cir. 2011) ("Although the injury sustained by the inmate must be more than *de minimis*, it need not be particularly serious in order to sustain an Eighth Amendment claim."); *Budd* 496 F.3d at 530-31 ("[a]lthough a pretrial detainee's injuries must be more than *de minimus* to support a constitutional violation, they need not be serious or significant."); *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996) (finding that officers engaged in excessive force by removing plaintiff's wedding ring).

Viewing the evidence in the light most favorable to plaintiff, there is no evidence showing that these two defendants engaged in any application of force, let alone force that was deliberately indifferent to

the plaintiff's rights. Indeed, plaintiff has failed to identify any evidence that either of these defendants came into physical contact with him. (*See* Dkt. 69 at 22, 30; Dkt. 58-7 at 12, 16; Dkt. 63-4 at 5).

Accordingly, the excessive force claims arising out of the December 2010 incident as to defendants Szemites and Nuckolls will be dismissed because, to the extent that any force was applied by these defendants, the force used was *de minimus*.

### 3. Deputies Winston, Mangrum, Pritchard, and Martin

Defendants argue that the video evidence clearly demonstrates that plaintiff was non-compliant with officer instructions and "wholly discredits plaintiff's version of events." (Dkt. 74 at 8). Defendants allege that plaintiff was instructed to remove his coat and shoes and enter a cell. Plaintiff concedes that he was given these instructions, and the video shows that he removed his coat. Defendants contend that the deputies' use of force was justified because they attempted to guide plaintiff into a cell and plaintiff resisted by throwing out his arm and kicking his leg backwards.

The Court is not convinced that the video shows this sequence of events.

The video shows some movement of plaintiff's arm and leg, however a reasonable juror could conclude from the video and plaintiff's testimony that he was not engaged in non-compliant behavior that justified the application of force. Video evidence also shows that defendants Mangrum, Pritchard, and Martin assisted Deputy Winston in either the takedown of plaintiff or in holding him down by his feet and shoulders during the time when Deputy Winston is alleged to have punched plaintiff in the back of the head. At the hearing on this motion, defendants' counsel concurred that one "could possibly" conclude form the video that plaintiff was not resisting.

As with the takedown, there remains a critical issue of material fact with respect to the alleged punch to the head that plaintiff claims occurred when he was lying on the ground. The video, while helpful in illuminating some of the actions that took place, does not resolve all of the factual disputes. If the jury concludes that Deputy Winston punched plaintiff in the back of the head while plaintiff was lying compliantly on the floor, then that conduct would constitute excessive force under the Fourteenth Amendment. *See Philbrook v. Lemere*, 2008 WL 4648241 at *3 (D.N.H. 2008) (finding that punching a detainee after

13

he was already handcuffed would be sadistic and malicious in violation of the Fourteenth Amendment).

For these reasons, there remains a material question of fact and a reasonable juror could conclude that plaintiff was compliant, that there was no need or justification for the application of force, and that defendants Winston, Mangrum, Pritchard, and Martin were deliberately indifferent to plaintiff's constitutionally protected rights.

### B. Whether a Constitutional Right Has Been Clearly Established

In determining whether the constitutional right is clearly established, the Court is limited to relying on decisions from the United States Supreme Court, the Sixth Circuit, district courts within the Sixth Circuit, and finally, decisions from other circuits. *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). Lower courts must not define the right at "a high level of generality." *Ashcroft v. Kidd*, 131 S.Ct. 2074, 2084 (2011). Rather, courts must define the right "on the basis of the specific context of the case." *Tolan*, 134 S.Ct. at 1866. But "courts must take care not to define a case's context in a manner that imports genuinely disputed factual propositions." *Id.*

14

Plaintiff need not point to cases involving situations identical to the instant case. "The rule is *not* that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful." *Griffith v. Coburn,* 473 F.3d 650, 659 (6th Cir. 2007). "The dispositive question is whether the defendants had fair warning that their actions were unconstitutional." *Id.* "Officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). To that end, "[t]he Court can consider more than merely the factual context of a prior case: the general reasoning that a court employs also may suffice for purposes of putting the defendant on notice that his conduct is clearly unconstitutional." *St. John v. Hickey,* 411 F.3d 762, 774 (6th Cir. 2005); *recognized as abrogated on other grounds*, *Marvin v. City of Taylor*, 509 F.3d 234, 246 n.6 (6th Cir. 2007).

In the Sixth Circuit, a pretrial detainee's right to be free from the use of excessive force amounting to punishment was clearly established law at the time of the alleged conduct. *See Leary*, 528 F.3d at 443 ("the Fourteenth Amendment Due Process Clause... "protects a pretrial detainee from the use of excessive force that amounts to punishment.")

(quoting *Graham v. Connor*, 490 U.S. at 395 n. 10); *Budd*, 496 F.3d at 530 ("The substantive component of Fourteenth Amendment due process protects citizens against conduct by law officers that shocks the conscience.") (internal quotes omitted); *see also Rose v. Reed*, 2014 WL 2695505 at *10 (S.D. Ohio 2014) (noting that *Leary* clearly established that the use of excessive force amounting to punishment against a compliant pretrial detainee was unconstitutional).

It is also well established that it is unconstitutional to punch a detainee once he has already been subdued. This Circuit has held that "the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Baker v. City of Hamilton,* 471 F.3d 601, 607 (6th Cir. 2006) (denying qualified immunity where plaintiff was struck after surrendering to police); *Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir. 1981) ("[n]o matter how difficult it is to apprehend a prisoner, the law does not permit officers to beat him once he is securely in custody."))

Accordingly, defendants Winston, Mangrum, Pritchard, and Martin's motion for summary judgment is denied because they are not entitled to qualified immunity for the December 2010 incident.

V.    Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

Defendants' second motion for summary judgment is GRANTED as it pertains to defendants Szemites and Nuckolls. The excessive force claims arising out of the December 2010 incident against these defendants are DISMISSED.

Defendants' second motion for summary judgment is DENIED as it pertains to defendants Winston, Mangrum, Pritchard, and Martin because there remain issues of material fact to be resolved by a jury.

The Court further adopts the following scheduling deadlines:

May 25, 2015: Motions in Limine Due.

June 22, 2015: Joint Final Pre-Trial Order Due.

June 30, 2015 at 1:00 pm: Final Pre-Trial Conference.

July 6, 2015: Jury Instructions and Proposed Voir Dire Due.

July 13, 2015 at 8:30am: Trial.

IT IS SO ORDERED.


Dated: May 4, 2015s/Judith E. Levy_____
Ann Arbor, MichiganJUDITH E. LEVY
United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 4, 2015.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager
